# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WAYNE V. WILLIAMS, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. PWG-17-347 |
| MEDICAL CORRECTIVE SERVICES, REGIONAL MEDICAL DIRECTOR | * | |
| PRIVATE HEALTHCARE CONTRACTOR SG.T FORNEY, and | * | |
| KRISTA BILAK, | * | |
| Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Wayne Williams, a state inmate held at the North Branch Correctional Institution ("NBCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. Pending are Motions to Dismiss or, in the Alternative, for Summary Judgment filed by Sergeant Gregory Forney, ECF No. 19, and Wexford Health Sources, Inc. and Krista Self (f/k/a Bilak) ("Medical Defendants"),[1] ECF No. 22. The parties briefed the motions. Forney Mem., ECF No. 19-1; Med. Defs.' Mem., ECF No. 22-3; Pl.'s Opp'n, ECF No. 24; Med. Defs.' Reply, ECF No. 25. Having reviewed the parties' briefs and exhibits, I find that a hearing is unnecessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated below, the Motions will be granted.

## Background

Plaintiff claims that he is allergic to the metal and plastic in the bunkbed in his double cell, and that his allergies cause chronic swelling in his legs and knees and poor circulation, leading to

---

[1] Plaintiff named "Medical Correctional Services" and "Private Health Care Contractor" in his Complaint. The Clerk shall amend the docket to reflect the correct name of Defendant as Wexford Health Sources, Inc. Additionally, although Plaintiff named as a Defendant "Regional Medical Director" he did not identify which Regional Medical Director he intended to sue, and no service of process has been executed on Regional Medical Director. The Complaint shall be dismissed as to Regional Medical Director.

numbness and loss of sensation. Compl. 3-4. Plaintiff states that his allergies force him to sleep on the concrete floor of his cell rather than in his bunk. *Id*. He alleges that, despite his allergies, Krista Bilak (now Self),[2] Nurse Practitioner, refused to allow him to be seen by a doctor and refused to recommend that he be seen by an allergy specialist. *Id*. at 3. Also, he asked for an assignment to a single cell due to his allergies, but his request was denied. *Id*. at 4. He alleges that the failure to place him in a single cell adversely impacts his health. *Id*. As relief, he seeks an injunction requiring reassignment to a single cell and consultation with an allergy specialist, as well as compensatory damages. *Id*. at 3.

The affidavits and medical records that Defendants have provided in support of their dispositive motions demonstrate that Plaintiff suffers from benign prostatic hyperplasia, Hepatitis C, a detached retina, hypertension, and exercise induced asthma. Joubert Aff. ¶ 4, ECF No. 22-5. On November 5, 2014, he was evaluated by James Hunt, R.N., regarding a request to be removed from his prescribed cardio-vascular diet. Med. Recs. 1, ECF No. 22-4. At that time, Plaintiff advised Hunt he was allergic to foods but was vague in describing his allergies. *Id*. at 2. Hunt advised Plaintiff there was no information in his chart indicating he suffered from allergies. *Id*.

Mahboob Ashraf, M.D., evaluated Plaintiff on December 23, 2014. *Id*. at 3-5. Dr. Ashraf recommended Plaintiff change from a cardio-vascular diet to a regular diet as he had no history of cardiac issues. *Id*. Examination was normal and Plaintiff was directed to follow up in three months. Plaintiff did not offer any complaints of allergies or symptoms related to allergies. It was noted that his asthma was well controlled but triggered by dust or allergy symptoms. *Id*. at 3.

In June of 2016, Plaintiff submitted two sick call requests complaining that his blood was not circulating properly when he slept on his "nylon-polyester" mattress and accordingly, he slept on the floor. *Id*. at 6-7. He also indicated he could not sleep on plastic. *Id*. He was seen by

---

[2] Because Defendant's name was Krista Bilak at the time of the alleged events, the name Krista Bilak will be used in this Memorandum Opinion.

2

Ricky Moyer, R.N. on June 22, 2016. *Id*. at 8-9. No signs or symptoms of distress were observed. *Id*. Moyer noted that there was no prior history of Plaintiff having difficulty with his mattress. Plaintiff was advised that his mattress could not be changed and that his blood work was within normal limits. *Id*. at 8.

Plaintiff was seen by Krista Bilak, R.N.P., on July 1, 2016 and September 23, 2016, for regular chronic care visits. Med. Recs. 10-17. Plaintiff's chronic conditions were noted to be controlled and his examinations were otherwise unremarkable. Plaintiff did not express any complaints regarding allergies to his bedding, metal, or other materials. *Id*. He was scheduled to return to the chronic care clinic in three months. *Id*.

Plaintiff submitted a sick call slip on October 25, 2016, complaining that his body became numb when resting on his bunk and that sleeping on his bunk caused his blood to not circulate freely. Med. Recs. 18. He was seen on October 27, 2016, by Bilak for a scheduled follow-up regarding a urine culture. *Id*. at 19-20. Bilak advised Plaintiff that his urinary problems were related to his prostatic hyperplasia and his medication was increased. *Id*. at p. 19. At that time Plaintiff requested a "thicker" mattress due to chronic pain which he associated with poor circulation caused by the bedding. Bilak advised Plaintiff that the mattress was "a custody issue." *Id*. She did not note any complaints or findings regarding an allergic condition. *Id*. at 19-20.

Plaintiff filed a sick call slip on November 2, 2016, seeking a medical order to sleep on the floor to address his circulation issues. *Id.* at 21. Katrina Opel, R.N. saw Plaintiff on November 4, 2016. *Id*. at 22. Plaintiff told Opel that he wanted a medical order that allowed him to sleep on the floor: that he "like[d] sleeping on the floor because it [was] better for [his] circulation." *Id*. Opel advised Plaintiff that sleeping on the floor was "a custody issue" and that "[c]ustody stated that they don't care if [Plaintiff] sleeps on the floor." *Id*. Plaintiff did not report suffering from allergies and did not attribute his desire to sleep on the floor to issues with allergies. *Id*. at 22-23.

3

On November 19, 2016, Plaintiff filed a sick call slip indicating he felt numbness when he slept on his bunk and requesting he be seen by a doctor and be provided a single cell. Med. Recs. 26. Bilak saw Plaintiff on November 25, 2016, for a routine examination. *Id*. at 24-25. The examination was unremarkable and Plaintiff did not raise any concerns at that time regarding allergies or issues sleeping in his bunk. *Id*.

Mahboob Ashraf, M.D. evaluated Plaintiff for a scheduled chronic care clinic on December 15, 2016. *Id.* at 27-30. The doctor conducted a full examination and did not note any abnormalities or specific changes in Plaintiff's chronic health conditions; Plaintiff did not raise any concerns regarding allergies during the examination. Moreover, Dr. Ashraf did not make any clinical finding regarding allergies. *Id*.

On January 1, 2017, Plaintiff submitted a sick call slip requesting to see the doctor due to poor circulation. Med. Recs. 31. It was noted that he had been evaluated by a physician on December 15, 2016. *Id.* Patricia Rose, R.N. evaluated Plaintiff on January 4, 2017. *Id.* at 32. Plaintiff expressed concern that his lower legs often swelled. She noted there was no evidence of ankle or leg edema present but also noted "1-2 plus pitting edem[a] noted." *Id*. Palpable but faint pulses were observed with good capillary refill. *Id*. Plaintiff told the nurse that the swelling occurred when he touched plastic or metal. *Id*. The nurse referred Plaintiff to a provider and advised him to elevate his feet. *Id*. at 33.

On January 4, 2017, Plaintiff submitted another sick call slip requesting to see a doctor due to swelling in his legs and knees. Durst Decl. & Recs. 15, ECF No. 19-2. It was again noted that Plaintiff had seen a physician on December 15 and the registered nurse on January 4, 2017, and a referral to the provider was pending. *Id*. On January 6, 2017, Plaintiff again submitted a sick call request indicating that he needed to see a doctor due to his allergies to metal and polyester. Durst Decl. & Recs. 14; Med. Recs. 34. He made a request to see an allergist. *Id*. On

4

January 11, 2017, Plaintiff was seen by Bilak due to his complaints of an allergic reaction to metal and requests for a single cell. Durst Decl. & Recs. 8; Med. Recs. 35. Bilak noted that Plaintiff requested a single cell so that he could sleep on the floor. Med. Recs. 35-36. Plaintiff was advised that a single cell was not warranted and he left the examination room threatening to "writ[e] about this" before a full examination could be completed. *Id*. Bilak noted that Plaintiff did not appear to be in any distress. *Id*. No rashes, or shortness of breath were observed. *Id*.

Plaintiff submitted a sick call form on January 19, 2017, indicating he suffered from chronic allergies to metal and polyester which caused swelling in his legs and poor circulation. Durst Decl. & Recs. 13; Med. Recs. 37. He was evaluated by Tammy Buser, R.N. on January 21, 2017, due to his complaints that he suffered from a metal allergy which necessitated his sleeping on the floor. Durst Decl. & Recs. 10; Med. Recs. 38-39. The nurse explained to him that as he slept on a mattress he was not in contact with the metal. He indicated he understood. Med. Recs. 38-39.

On April 20, 2017, after having filed suit, Williams submitted another sick call slip asking to see a specialist for allergies to metal and materials in his mattress. *Id*. at 40. Breauna Baker, R.N. examined Plaintiff on April 22, 2017. *Id*. at 41. Plaintiff had no rash or other symptoms of an allergic reaction. When advised that he was sleeping on the mattress and not the metal, Plaintiff responded that he had problems with that too. He was advised to follow up if he developed a rash or other symptoms and it was noted that he was prescribed Mobic and muscle rub for muscle aches and pains. *Id*.

Plaintiff was next evaluated by Stacie Mast, R.N. on April 28, 2017, in response to a sick call slip filed on April 26, 2017, again complaining of allergies to plastic, polyester and metal. *Id*. at 43-44. Plaintiff arrived in the medical department wearing metal cuffs, continued to wear the handcuffs for at least 15 minutes, and sat on plastic, all with no reaction noted. *Id*. at 44. Plaintiff

5

was advised that he has no allergies to metal or plastic. *Id*. He states that he wanted a pillow top mattress and that he was aware that medical had a "machine . . . that can tell things." *Id*.

The Medical Defendants note that Plaintiff continues to be regularly monitored in the chronic care clinic for his chronic conditions and may access medical care through use of the sick call process. Joubert Aff. ¶ 20. Dr. Joubert avers that in her opinion, Plaintiff has been properly assessed for his alleged allergies and received appropriate medical care. *Id*. ¶ 19. No objective clinical evidence has been observed to support Plaintiff's claims of allergies and there is no medical indication to support a referral of Plaintiff to an allergist, or for Plaintiff to receive a single cell, or a special mattress. *Id*.

Sgt. Forney asserts that "single cell assignments, for medical reasons, are determined by private health care contractors" and that he does not have the authority to dictate or influence the type of medical care any inmate receives or the decisions that the health care providers make. Forney Aff. ¶¶ 6, 8, ECF No. 19-3. Forney also states that he "ha[s] no authority to assign an inmate to a single cell for medical reasons." *Id*., ¶ 8. Forney denies any involvement in providing or interfering with Plaintiff's medical care. *Id*. ¶ 7.

## Standards of Review

### A. Motion to Dismiss

Williams's pleadings are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although at this stage of the proceedings, I must accept the well pleaded facts

alleged in Williams's Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), I need not accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Motion for Summary Judgment

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Matherly v. Andrews*, 859 F.3d 264, 279, 280 (4th Cir. 2017). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Analysis

### A. Respondeat Superior

It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). A private corporation is not liable under § 1983 for actions allegedly

committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.,* 316 Fed. App'x 279, 282 (4th Cir. 2009). Given that Williams has failed to allege a basis other than respondeat superior for Wexford's liability, his claims against Wexford Health Source, Inc., are dismissed.

        **B.        Eighth Amendment Claim**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard – a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695- 96 (4th Cir. 1999).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A medical

condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008), *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844.

Here, Plaintiff was regularly seen in the chronic care clinic as well as in response to sick call slips that he submitted. He was regularly evaluated and his health care providers saw no evidence that he suffered from any allergies. As such, Bilak, and other health care providers, saw no need to refer Plaintiff to an allergy specialist or recommend he receive single cell status. Plaintiff argues that Bilak is not a physician or an allergy specialist and therefore was not capable of determining whether he suffered from the alleged allergies. Pl.'s Opp'n 5-6. Bilak as a Nurse Practitioner is qualified to determine whether Plaintiff presented with symptoms of an allergic reaction, and whether to refer Plaintiff to a physician for further diagnosis or treatment.

9

Moreover, the record evidence demonstrates that Plaintiff is regularly seen by physicians in the Chronic Care Clinic. He has failed to complain of his allergy symptoms during those encounters. None of the medical providers who regularly treat Plaintiff for any of his chronic conditions have determined that additional diagnostic or treatment is required. Plaintiff's mere disagreement with the course of action prescribed by health care providers does not state a civil rights claim. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). In short, Plaintiff has failed to demonstrate that medical providers acted with deliberate indifference to his serious medical needs.

Additionally, as to Forney, § 1983 requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). Plaintiff has failed to put forth any evidence that Forney himself interfered with Plaintiff's medical care. Absent such evidence, it is undisputed that Forney is not responsible for making medical decisions regarding inmates and there is no evidence that he interfered in the provision of medical care to Plaintiff. Forney had no authority to assign Plaintiff a single cell for medical reasons absent an order from the medical department that Plaintiff qualified for one. Plaintiff's medical providers did not determine that Plaintiff was entitled to single cell status and as such Forney could not assign Plaintiff to a single cell due to Plaintiff's subjectively stated medical needs. Plaintiff has failed to come forth with any evidence that Forney was deliberately indifferent to his serious medical needs.

## Conclusion

In light of the foregoing, Defendants' dispositive motions will be granted. A separate Order follows.

July 24, 2018                                                                             \_\_\_\_/S/_____
Date                                                                                                     Paul W. Grimm
                                                                                                              United States District Judge